JASNOWSKI *v.* BOARD OF ASSESSORS OF THE CITY OF DETROIT.

1. AUTOMOBILES—TAXATION—CONSTITUTIONAL LAW.

The tax imposed on motor vehicles by Act No. 302, Pub. Acts 1915, entitled "An act to provide for the registration, identification and regulation of motor vehicles operated on the public highways of this State and of the operators of such vehicles and to provide for levying specific taxes upon such vehicles so operated and to provide for the distribution of such funds and to exempt from all other taxation such motor vehicles so specifically taxed," etc., is imposed not on the property, but upon the privilege of operating automobiles on the highways of the State, and partakes of the nature of a fee for privilege or license rather than a property tax. And the statute is sufficiently

entitled to sustain the validity thereof, as against the objection that the title included two objects.

2. SAME—TAXATION—EXEMPTION—CONSTITUTIONAL LAW.

What classes of property shall be taxed and what shall be exempted except as restricted by the Constitution is a question that rests within the discretion of the legislature. It is within legislative authority to exempt from other forms of taxation, property which pays a specific tax, whether or not the tax is levied on the property itself or on the right to use it in a certain way.

3. SAME—REVIEW OF LEGISLATIVE DISCRETION.

And the question whether the motor vehicle tax should be in lieu of, or in addition to, all other forms of taxation was one which appealed to the legislative discretion, that, once exercised, was not reviewable by the courts.

4. SAME—SPECIFIC TAX—HIGHWAYS.

The statute is not unconstitutional because it provides that the funds secured by the specific tax shall be devoted to upbuilding the State highways in that it infringes the provisions of section 1, Art. 10, of the Constitution, limiting the sources of contributions to the primary school fund to that purpose alone; and the fact that some automobiles were owned by corporations and included in the valuation on which they paid taxes did not have the effect of invalidating the classification, as those so owned and taxed were exempt from other forms of taxation under express terms of Act No. 302, Pub. Acts 1915.

5. SAME—UNIFORMITY.

The act is valid as a classification and does not fail in the matter of uniformity.

6. SAME—CONSTITUTIONAL LAW—HOME RULE.

Nor was the statute invalidated by providing for a tax on automobiles used in one division or corporation and for the expenditure of the funds in other counties; it is within the legislative authority to determine what roads should be improved by a tax that became a State fund when paid.

KUHN, OSTRANDER, and BROOKE, JJ., dissenting.

Certiorari to Wayne; Mandell, J. Submitted April 4, 1916. (Calendar No. 27,160.) Decided May 12, 1916.

Mandamus by Charles H. Jasnowski, prosecuting attorney of the county of Wayne, on relation of Julius L. Krimmel against Daniel L. Dilworth and others, constituting the board of assessors of the said county, to compel the respondents to assess motor vehicles in the city of Detroit. An order denying the writ is reviewed by relator 'on certiorari. Affirmed.

*Harry J. Dingeman* and *Vincent M. Brennan*, for relator.

*Grant Fellows*, Attorney General, and *Leland W. Carr*, Assistant Attorney General, for respondents.

*Fred A. Baker, amicus curiæ.*

BIRD, J. This proceeding questions, upon constitutional grounds, the validity of the Michigan motor vehicle law, passed by the legislature of 1915, the same being Act No. 302 of that session (1 Comp. Laws 1915, § 4797 *et seq.*).

1. The validity of the act is assailed because the legislature failed to observe the constitutional requirement that "no law shall embrace more than one object." Article 5, § 21. The title of the act reads:

"An act to provide for the registration, identification and regulation of motor vehicles, operated on the public highways of this State and of the operators of such vehicles and to provide for levying specific taxes upon such vehicles so operated and to provide for the disposition of such funds and to exempt from all other taxation such motor vehicles so specifically taxed, registered, identified and regulated and to repeal all other acts or parts of acts inconsistent herewith or contrary hereto."

It is pointed out that this title provides for both regulation and taxation—two distinct objects. Whether the act shall be declared invalid on this ground must turn upon the nature of the tax which the act imposes. Should the several provisions of the act relating to taxation be adjudged a property tax, counsel's

objection would be a serious one. If, however, the provisions be construed as an occupation or privilege tax, the act would not be open to that objection. The legislature, in the exercise of the police power of the State, may enact a regulatory statute in which regulation and taxation are so blended as to have but a single purpose. An illustration of this may be found in the liquor law of 1887 (Act No. 313, Pub. Acts 1887), which was an act providing for the "regulation and taxation" of the liquor traffic. The title to that act was assailed on the same ground as the present one, but this court approved it in *Robison* v. *Miner*, 68 Mich. 549 (37 N. W. 21). A careful study of the various provisions of the act persuades us that a privilege tax was intended rather than a property tax. The tax is not imposed upon the property, but upon the privilege of operating a motor vehicle upon the highway. That it was not intended by the legislature to impose a property tax is evidenced in part by the fact that one may own one or more motor vehicles and have them in his possession, and they will not be subject to the provisions of the act, unless he chooses to operate them upon the highway. And a person who is not the owner of a motor vehicle is liable for the tax if he operates one upon the highway for a period greater than 30 days. The act provides that motor vehicles in stock owned by manufacturers, except those vehicles licensed to go upon the highway, shall be subject to the personal property tax. The act provides for no exemption from the payment of this tax, even though the owner has theretofore paid a property tax on his motor vehicle. These and other like considerations tend to characterize the act as one imposing a tax for the privilege of operating motor vehicles upon the public highways of the State. In view of these considerations we are of the opinion that the tax imposed is a privilege tax and is one of the regulatory features

of the act. This being so the objection that the title gives notice of two distinct objects is without force.

2. A further contention is made that the legislature was not acting strictly within its authority when it exempted motor vehicles complying with the law from all other forms of taxation. It is urged that this action upon the part of the legislature in exempting such a large amount of property from the *ad valorem* tax rolls of the State was at least in contravention of a fixed policy theretofore pursued by the State. The question as to what classes of property shall be taxed and what shall be exempted, except as restricted by the Constitution, is one which rests within the discretion of the legislature. *People* v. *Railway,* 1 Mich. 458; *People* v. *Auditor General,* 7 Mich. 84; *Board of Supervisors* v. *Auditor General,* 65 Mich. 408 (32 N. W. 651); 12 Am. & Eng. Enc. Law, p. 272; 37 Cyc. p. 885; Cooley on Taxation (3d Ed.), pp. 262, 342.

It is within the power of the legislature to exempt from other forms of taxation property which pays a specific tax, and this is true whether the specific tax is levied upon the property itself or upon the right to use the property in a certain way. *Union Trust Co.* v. *Common Council,* 170 Mich. 692 (137 N. W. 122); *State* v. *Telegraph Co.,* 73 Me. 518; *Douglass* v. *City of Anniston,* 104 Ala. 291 (16 South. 133); *People* v. *Coleman,* 121 N. Y. 542 (25 N. E. 51); *Cape Fear Bank* v. *Edwards,* 27 N. C. 516; *Oil City* v. *Trust Co.,* 151 Pa. 454 (25 Atl. 124, 31 Am. St. Rep. 770); *Vicksburg Bank* v. *Worrell,* 67 Miss. 47 (7 South. 219).

The first case cited deals with our mortgage tax law. That law provides a specific tax upon mortgages and exempts them from further general taxation under the laws of this State. This phase of the law was upheld by this court.

In the last case cited it was said:

"If the legislature deems it wise to compound for

all other taxes on a particular kind of business, by receiving a prescribed sum as a substitute for all taxes, it must be assumed by the courts that it was the legislative determination that the sum fixed was a proper equivalent for the taxes obtainable in a different mode, and that it was a proper exercise of legislative power. This results, necessarily, from the legislative control over the subjects of taxation, restrained only by constitutional requirements, obligatory alike on the legislature and the courts. Where the particular arrangement of taxation provided by legislative wisdom may be accounted for on the assumption of compounding or commuting for a just equivalent, according to the determination of the legislature, in the general scheme of taxation, it will not be condemned by the courts as violative of the Constitution."

It may well be assumed that the legislature gave heed to the growing demand among the people of the State for improved highways and concluded that the motor vehicles, which were largely responsible for that demand, should bear the expense of the betterments, and accordingly imposed this form of contribution. The question as to whether this tax should be in lieu of, or in addition to, all other forms of taxation, was one which appealed to the discretion of the legislature. Having exercised that discretion, it is not for the courts to declare that it did not exercise it wisely or justly.

3. Section 4, article 10, of the Constitution, provides that " the legislature may by law impose specific taxes, which shall be uniform upon the classes upon which they operate." It is argued that the act offends against this provision of the Constitution in that it creates a class for the individual owners of motor vehicles and levies a tax thereon of 25 cents per horse power, and 25 cents per hundredweight, and another class for the manufacturers and levies a flat rate of $10 per car. But within this latter class is not included the manufacturer's car for private use or hire. The cardinal purpose of the manufacturer is to manufacture and

sell motor vehicles. In accomplishing this purpose they are incidentally used on the highway. The chief object of the individual in owning a motor vehicle is to use it for business or pleasure upon the highway. This difference in ownership and use of the motor vehicle constitutes a reasonable distinction, which will support the classification which the legislature has seen fit to make. It will be observed that all persons in a given class are treated alike. When this is accomplished the constitutional mandate with reference to uniformity is satisfied. 36 Cyc. p. 992, and cases.

4. Because the act provides that the money raised by this tax shall be devoted to the upbuilding of the highways of the State, it is insisted that it infringes the constitutional provision that:

"All subjects of taxation now contributing to the primary school interest fund under present laws shall continue to contribute to that fund. * * *" Section 1, art. 10.

It is contended that certain corporations which were contributing to the primary school interest fund when this constitutional provision became effective in 1909, were then owners of motor vehicles and were taken into consideration by the assessors in determining the value of the corporate property for the purpose of taxation, and hence contributed to the said fund. We think a reasonable construction of this constitutional provision is that it has reference to the subjects of taxation as a class. The taxation of motor vehicles as a class of property has never contributed to the primary school interest fund. The mere fact that a few motor vehicles were included in the corporate property of the railroads and other corporations when the value of their property was determined by the State board of assessors for the purpose of taxation, does not thereby bring them as a class within the meaning of that provision.

It must however, be held that motor vehicles owned by and used in the business of companies assessed by the State board of assessors are not subject to the provisions of this act. They are exempt from other forms of taxation, the same as the horses and wagons were which they displaced. This is due to the fact that the tax imposed upon such companies is in lieu of other forms of taxation. The difference in the use and ownership of motor vehicles when possessed by these companies justifies a different classification for the purposes of taxation.

5. The final objection is that:

"The act is void because it seeks to impose a specific tax upon personal property not devoted to the public use; it exempts such property from *ad valorem* taxation, and provides for the collection of money by taxation from owners of vehicles in cities and villages, to be expended on the roads in the townships outside the limits of such cities and villages."

What has already been said will suffice on the first and second points raised by this objection. The third point is answered, in my opinion, by the constitutional provision which authorizes the State to engage in works of internal improvement of this character. Article 10, § 14. The tax is levied by State authority, and when collected goes into the State treasury and becomes a part of the State highway fund. And we think the constitutional permission referred to furnishes a basis for the action of the legislature in disbursing the fund as outlined by the act, even though it results in restricting betterments to territory outside of the limits of cities and villages. Obviously all of the wagon roads of the State cannot be improved in one season. If they cannot, then some person or body must have the authority to determine which of them shall be first improved. The legislature has assumed this authority and we think properly so.

We are of the opinion that the act should not be declared invalid for the reasons urged. The order of the trial court is affirmed.

STONE, C. J., and MOORE, STEERE, and PERSON, JJ., concurred with BIRD, J.

OSTRANDER, J. (*dissenting*). A majority of the justices being of opinion that the statute in question is valid, I should register a bare dissent if the Constitution did not require reasons for a dissent to be stated.

It is said in the majority opinion that "a careful study of the various provisions of the act persuades us that a privilege tax was intended rather than a property tax." This proposition is advanced in the face of a contrary, express, legislative declaration. In the title the act is described as one "to provide for levying specific taxes upon such vehicles so operated. * * * " It is provided in section 7 that the secretary of State shall collect taxes before registering a motor vehicle, "which taxes shall be all the lawful tax collectible on such motor vehicle and shall exempt such motor vehicle from all other forms of taxation." In the body of the act, while there are some inconsistent provisions and some phrasing and some provisions upon which one may insecurely hang the theory of a privilege rather than a property tax, it is made plain that one object of the act is to take motor vehicles operated on the highways out of the class of property paying taxes upon an *ad valorem* basis and put them into a class which shall pay specific taxes; to substitute one method of taxing property for the other. The purpose made manifest in the act is not a purpose to confer upon automobile owners, or upon persons using automobiles, a privilege, not a purpose to tax a privilege, or a business, or occupation, but a purpose to tax property. The act bears no resemblance to the liquor law of 1887, considered in *Robison*

v. *Miner*, referred to in the majority opinion. To say that the legislature may exempt from other taxation property which pays a specific tax is to state a proposition which involves the idea that the specific tax is a tax on property. The specific tax levied upon mortgages and land contracts is a tax upon property, and to sustain the legislation which imposed the tax is not to sustain the proposition that the act in question here provides for a privilege tax.

The proposition upon which the majority opinion must rest is not that a specific tax upon property may be in lieu of all other taxes upon the property, but is that a privilege tax may be levied which shall be in lieu of all taxes upon a certain class of property. Because if it is conceded that the tax imposed by this act is a tax upon property, it must also be conceded that the act has more than one object. The legislation is, in my opinion, a perfect example of an act embracing more than one object, and it illustrates the evil at which the constitutional inhibition which demands that no act shall embrace more than one object is aimed. If the act provides for a privilege tax, the tax and privilege should go together. In the operation of this law they will not go together. And, in the majority opinion, it is found to be necessary to create a class of automobile users who are exempt from payment of the privilege tax. If it is not a tax upon property, and is a privilege tax, then it does not at all interfere with the assessment of property by the State board of assessors. The assessment of property which they are required to make will be neither increased nor diminished on account of the fact that certain corporations, the property of which they value for taxation, own automobiles which they operate upon the highways.

The majority opinion rests, also, in part, and in essential part, upon the proposition that the legislature may exempt from taxation such property as it chooses.

This is undoubtedly the statement of a general rule. I think it unnecessary to pursue the subject beyond remarking that in my opinion the power to exempt property from taxation is not unlimited, nor is the power unlimited to bestow for the benefit of one local community the taxes contributed in another.

I content myself with the attempt to point out that this act has various objects, the combination of which in one statute may be supposed to have contributed to its enactment.

KUHN, J., concurred with OSTRANDER, J.

BROOKE, J. (*dissenting*). I agree with my Brother BIRD in holding that the act in question does not offend section 21, article 5, of the Constitution, which provides that "no law shall embrace more than one object, which shall be expressed in its title." The obvious purpose of the legislature in enacting the legislation in question was the regulation of the operation of motor vehicles upon the highways of the State, and considering broadly such purpose, there can be no doubt that the imposition of a specific tax upon such motor vehicles is merely incidental and does not constitute a second "object." The title as amended meets the objection pointed out in *Vernor* v. *Secretary of State,* 179 Mich. 157 (146 N. W. 338, Am. & Eng. Ann. Cas. 1915D, 128).

I think that the determination of my Brother BIRD that the tax should be regarded as one upon the privilege of operating an automobile instead of a tax upon property is wrong, though perhaps unimportant. Under the Constitution of 1909 (section 4, art. 10) the legislature may by law "impose specific taxes, which shall be uniform upon the classes upon which they operate." This power was recognized and affirmed in *Union Trust Co.* v. *Common Council,* 170 Mich. 692

(137 N. W. 122), where a specific tax upon mortgages and land contracts was imposed in lieu of all other taxes. From the early case of *People* v. *Auditor General*, 7 Mich. 84, it has been the law in this State that "the legislature has the power of prescribing the subjects of taxation and of exemption." It is clear that the act in question does not seek to exempt automobile property from taxation, but simply changes the method of raising taxes thereon from an *ad valorem* basis to a specific basis.

I am further in accord with the conclusion of my Brother BIRD when he holds that the classifications contained in the measure are not so arbitrary and discriminatory as to render it invalid.

There remains for consideration, however, the questions arising under section 34 of the act. That section is as follows:

"All fees paid to the secretary of State as provided in this act shall be turned over to the State treasurer and applied to the State highway fund, the remainder to be applied to the building and improvement of the highways of the State under such division of said fund and for such purposes as the highway laws of the State shall provide, to be paid out by the State highway commissioner in accordance with the statutory provisions therefor: *Provided,* that fifty per cent of the amount collected from the registered motor vehicles in each county shall be returned to the treasurer of each county, to be used to maintain the highways by the local authorities: *Provided, further,* that in counties not operating under the county road system, the board of supervisors shall apportion such tax received to the several townships and cities according to the assessed valuation thereof, to be used by such townships, and cities for the construction and maintenance of the highways. The secretary of State shall certify to the auditor general on January first of each year, or as soon thereafter as possible, the amounts received from the several counties for motor vehicle taxes under the provisions of this act for the preceding calen-

dar year; the auditor general shall thereupon draw his warrant on the State treasurer for such amounts as are due the several counties under the provisions of this section. Any moneys remaining in either fund at the close of any year shall be carried over by the auditor general and added to the funds which become available for the following year."

Referring to "the statutory provisions" mentioned in said section, we find that section 18, chapter 4, of the general highway law, Act No. 75, Pub. Acts 1915 (1 Comp. Laws 1915, § 4364), provides as follows:

"All State rewarded roads composing a part of this system shall be taken over as county roads by the board of county road commissioners, and any road heretofore laid out, or any part thereof, shall become a county road if the board of county road commissioners shall at any time so determine, and in passing through or on the line between townships and incorporated villages or cities any streets or parts of streets of such village or city may be adopted as a county road, with the consent of the proper authorities of such city or cities, village or villages: *Provided, however,* that where any street or part of a street is taken over in passing through or on the line between a township and an incorporated village or city, no county road funds shall be expended for the improvement of any such street or part of a street of such village or city to a greater width than sixteen feet, nor with material more expensive than concrete or brick."

The Constitution (section 26 of article 8) provides:

"The legislature may by general law provide for the laying out, construction, improvement and maintenance of highways, bridges and culverts by counties, districts and townships; and may authorize counties or districts to take charge and control of any highways within their limits for such purposes. The legislature may also by general law prescribe the powers and duties of boards of supervisors in relation to highways, bridges and culverts; may provide for county and district road commissioners to be appointed or elected, with such powers and duties as may be pre-

scribed by law; and may change and abolish the powers and duties of township commissioners and overseers of highways. The legislature may provide by law for submitting the question of adopting a county or district road system to the electors of the counties or proposed districts, and such road system shall not go into operation in any county or district until approved by a majority of the electors thereof voting on such question. The tax raised for road purposes shall not exceed in any one year three dollars upon each one thousand dollars of assessed valuation for the preceding year."

So far as it has any bearing upon the question hereafter discussed this section is the same as section 49—as added in 1893 (see 1 Comp. Laws 1897, p. 88)—of article 4 of the Constitution of 1850.

Passing the contention of the appellants that this section cannot be sustained because in counties operating under the county road system money is raised by taxation in one municipality to be expended in another, I am of opinion that the section cannot be sustained for another and a broader reason.

Through the distribution to the various counties of the State of one-half of the tax raised in each county, the money so turned over to be used in each county for highway purposes, the State has undertaken to, and does, invade the domain of local self-government. This principle is basic in character and has become thoroughly imbedded in the jurisprudence of the State. See *People* v. *Hurlbut*, 24 Mich. 44 (9 Am. Rep. 103). In the case of *Hubbard* v. *Township Board*, 25 Mich. 153, the court had under consideration the validity of an act providing for the improvement of Fort street from the city of Detroit to the Dearborn road. The work was ordered to be made by law of the State and the moneys raised and expended by State agents, the expense being charged in part upon the township and in part upon a smaller district, but leaving those lo-

calities with no option of receiving or rejecting the burden. The court said:

"The result is that a purely local work, public in its character, is taken charge of and conducted at local expense, and paid for by local bonds and taxes, without giving any of the local authorities any function to perform, except that of yielding implicit obedience to the orders and requisitions of a commission, in whose appointment and government the town and its people have had no part whatever. This is a very clear usurpation, and, so far as it goes, an absolute destruction of the local privileges."

In the case of *Board of Park Commissioners* v. *Common Council*, 28 Mich. 228 (15 Am. Rep. 202), Mr. Justice COOLEY said:

"The constitutional principle that no person shall be deprived of property without due process of law applies to artificial persons as well as natural, and to municipal corporations in their private capacity, as well as to corporations for manufacturing and commercial purposes. And when a local convenience or need is to be supplied in which the people of the State at large, or any portion thereof outside the city limits, are not concerned, the State can no more by a process of taxation take from the individual citizens the money to purchase it, than they could, if it had been procured, appropriate it to State use. To this extent the corporate right appears to us to be a clear and undoubted exception to the general power of control which is vested in the State.

"Whoever insists upon the right of the State to interfere and control by compulsory legislation the action of the local constituency in matters exclusively of local concern should be prepared to defend a like interference in the action of private corporations and of natural persons. It is as easy to justify on principle a law which permits the rest of the community to dictate to an individual what he shall eat, and what he shall drink, and what he shall wear, as to show any constitutional basis for one under which the people of others parts of the State, through their representatives, dictate to the city of Detroit what fountains shall

be erected at its expense for the use of its citizens, or at what cost it shall purchase, and how it shall improve and embellish a park or boulevard for the recreation and enjoyment of its citizens. The one law would rest upon the same fallacy as the other, and the reasons for opposing and contesting it would be the same in each case. * * * In making contracts and creating debts for the city, the commissioners are in effect exercising a power of taxation, which is one of the highest attributes of sovereignty, and the distance between their former power to advise, and the power now claimed to compel, can only be adequately measured when it is perceived that the one belongs to the lowest grade of powers, while the power to tax is the highest that can exist in local municipal government. No precedent entitled to respect can justify such a change of powers; for, from the very dawn of our liberties the principle most unquestionable of all has been this: That the people shall vote the taxes they are to pay, or be permitted to choose representatives for the purpose."

See, also, *Attorney General* v. *Pingree*, 120 Mich. 550 (79 N. W. 814, 46 L. R. A. 407), and *Davidson* v. *Hine*, 151 Mich. 294 (115 N. W. 246, 15 L. R. A. [N. S.] 575, 123 Am. St. Rep. 267, 14 Am. & Eng. Ann. Cas. 352).

I am of opinion that under the foregoing authorities it is entirely beyond the power of the legislature to provide by law for the raising of money by taxation in a county, and then turn that money, or a part of it, back into the treasury of the county to be expended by the local authorities for a purely local purpose. That the State might impose the tax in question, and when collected cover the same into the State treasury to be used for general purposes or for a specific purpose, such as for the improvement of the general highways of the State, is not questioned.

Should the illegal provisions of section 34, with reference to the application of the fund, be held sufficient to invalidate the entire act? It is, I think, beyond

question that, shorn of the provision for the return of 50 per cent. of the taxes raised in the several counties of the State to those counties, the act could not have secured sufficient support to assure its passage.

I am therefore of opinion that the entire act should be held invalid, and the decision of the court below reversed.