[No. 3189. July 25, 1927. Rehearing Denied Feb. 2, 1928.]

STATE v. MILLER.

[263 Pac. 510.]

J. G. Osburn and Reese & Reese, all of Roswell, for appellant.

Fred E. Wilson, Atty. Gen., and R. C. Dow, Asst. Atty. Gen., for the State.

OPINION OF THE COURT

BICKLEY, J. Appellant was convicted by a jury of Chaves county of unlawfully and feloniously operating a motor vehicle in Roswell while in an intoxicated condition. Appellant filed his motion to arrest the judgment, specifying therein seven grounds of said motion. He has appealed from the judgment and sentence of the court and assigns error of the court in overruling said motion, as follows:

1. Section 26 of chapter 150 of the Session Laws of New Mexico of 1919, under which appellant was indicted,

tried, and convicted, is contrary to the provisions of section 16 of article 4 of the Constitution of New Mexico, and void, the subject thereof not being embraced in the title of said act.

2. Said chapter 150 of said Session Laws of 1919 contains more than one subject, and is contrary to the provisions of section 16 of article 4 of the Constitution of New Mexico, and is therefore void.

3. The indictment in said cause does not state any offense under the laws of the state of New Mexico.

▮ Section 26 of chapter 150 of the Session Laws of New Mexico of 1919 is as follows:

"Sec. 26. *Operation by Intoxicated Person.* Any person who shall, while in an intoxicated condition, operate or attempt to operate a motor vehicle upon any public highway or within any incorporated city, town or village within this state, shall, upon conviction, be subject to imprisonment for a period of not less than thirty days or more than one year and a fine of not less than one hundred dollars or more than one thousand dollars."

The title is as follows:

"An act to provide for state licensing of motor vehicles, providing for the registration, regulating the operation, use and speed thereof, providing for the temporary licensing of tourist vehicles, limiting the width of tires that may be used on the public highways, making it unlawful to obstruct or impair public highways and bridges, prescribing penalties and liabilities for the violation of this act, and repealing all laws and parts of laws in conflict herewith."

Section 16 of article 4 of the New Mexico Constitution provides:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws; but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void."

Most of the state Constitutions contain provisions similar in purpose to the one above quoted. Some of the provisions contain the word "object" instead of "subject." Some of the courts consider that there is no material distinction because of this diversity of expression. We have in State v. Ingalls, 18 N. M. 211, 135 P. 1177, leaned to

the position that the word "subject" was less restrictive than "object." While this question has engaged the attention of courts of last resort very frequently and under such a variety of facts and circumstances that the opinions of the courts afford few illustrations which would be helpful in arriving at a conclusion concerning this legislation, however, the general principles which apply are few in number and are simple, the task being to make an appropriate application of them. They are: (1) The purposes of the constitutional provisions are to prevent surreptitious "log-rolling" legislation and to give general notice to all concerned of the character of proposed legislation. (2) The constitutional provisions are mandatory, but should be liberally construed, so as not to impede proper legislative functions. (3) The propriety of the title of a statute is primarily a legislative question. (4) It is not necessary that the details of a statute shall be embraced in its title, but only that its contents shall be germane thereto. (5) In case the court is in doubt as to the sufficiency of the title, it must be upheld. See case note to State v. Fontenot, Ann. Cas. 1915A, 76, where the decisions are collected and classified. We may observe further that State v. Ingalls, supra, and State ex rel. Whittier v. Safford, 28 N. M. 531, 214 P. 759, and the New Mexico cases therein cited also support the above-mentioned principles.

In State v. Ingalls, supra, we quoted Judge Cooley, as follows:

"The generality of a title is therefore no objection to it so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be construed as having a necessary or proper connection."

It may not be amiss to quote a few expressions of the courts, illustrating Judge Cooley's statement: In the case of Lynch v. Chase, 55 Kan. 367, 40 P. 666, it was said:

"It is not necessary that the title should be an abstract of the entire act, but it is deemed to be sufficient if the title fairly indicates, though in general terms, its scope and purposes. Everything connected with the main purpose and reasonably adapted to secure the objects indicated by the title may be embraced in the act, without violating the constitutional inhibition."

In Commonwealth v. Jones, 4 Pa. Super. Ct. 362, it was said:

"The unity of the subject of a statute is to be determined by its paramount purpose rather than by the details through which that purpose is to be accomplished. The subject may have but one object, while the measures necessary for the attainment of that object may necessarily embrace many subordinate subjects, differing in their nature and particular effect, yet all contributing to it, and comprised within the principal subject. Everything which the nature of the subject of a title reasonably suggests as necessary or appropriate for the accomplishment of its expressed purpose is sufficiently indicated by such title."

See, also, Berry on Automobiles (4th Ed.) § 41.

In Oliver v. State, 195 Ind. 65, 144 N. E. 612, it is said:

"In determining what is general subject to which an act relates, court will look from title to body of act, and from body to title, and from consideration of all provisions will determine whether or not provisions are all fairly referable to one general subject expressed in title and matters properly connected therewith under Const. art. 4, § 19 (Burns' Ann. St. 1914, § 115)."

██ Let us now consider the nature of the legislation, its object, and the evils to be remedied. The following is an apt expression from State ex rel. McClung v. Becker (1921) 288 Mo. 607, 233 S. W. 54:

"The advent of motor vehicles made necessary the continued expenditure of large sums of money in the construction and maintenance of better roads and bridges, including the cost for the protection and identification of such vehicles, for police protection, and for control and direction of the heavy and dangerous traffic which came with that class of high-powered vehicles. It is therefore not only a police regulation, but a revenue measure as well." Berry Automobiles, par. 110, p. 119.

Apparently the first legislation in New Mexico dealing with the subject was chapter 28, Laws of 1912, "an act to provide for state license of automobiles." The act was brief. It provided for the payment of a license fee by those who maintained and operated automobiles, provided a penalty for operating without a license and a penalty for destroying or defacing a license tag or plate, established a rule of prima facie evidence of ownership of automobiles in those having a license to operate same and that the fees for license should be credited to the state road fund. This statute was assailed as being unconstitutional, for

the reason that the act embraced more than one subject and that the subject was not clearly expressed in the title. The act was, however, upheld in State v. Ingalls, supra. The decision was that the subject of the act of 1912 was "to provide for state license on automobiles," and that the provision relative to the disposition of the fund resulting from the collection of the license was not incongruous to the subject expressed in the title and was germane thereto. It was also decided that, even if the imposition of the license fees be regarded as imposed for the purpose of raising revenue, it did not follow that the imposition of such fees was beyond the power of the Legislature. It was also said that the act was regulatory and provided for the imposition of a privilege tax. In Berry on Automobiles (4th Ed.) § 133, it is said:

"A regulatory measure may also be a revenue measure without being objectionable on that account"—citing State v. Ingalls, supra, and many other cases.

In the recent case of Bleon v. Emery, 60 Utah, 582, 209 P. 627, the court said that one of the provisions of the act was that the secretary of state shall not register any vehicle or issue any certificate of registration thereof or numbered plates therefor, unless and until the owner thereof shall have complied with the provisions of this act, and proceeded:

"There are numerous other provisions of the motor vehicle law, which, if construed together, as they must be, make it very clear that the law was intended as a regulatory measure to protect the owners of motor vehicles, so far as that can be done by the identification of each owner, as well as of each vehicle, from fraudulent transfers and from thefts, etc.; that it was also intended as a revenue measure to raise funds for the construction and maintenance of paved, macadamized, and other roads. The fact that the statute is both a regulatory measure and a revenue measure in no way affects its validity"—quoting Berry on Automobiles.·

In the annotation to Whaley v. Northern Road Improvement Dist. of Arkansas County, 152 Ark. 573, 240 S. W. 1, 24 A. L. R. 934, the annotator, in discussing the limitation of legislative act of one subject expressed in the title, said:

"A statute entitled 'An act to regulate, license, and govern the use of motor vehicles' has been held not to be objectionable as relating to two subjects, only one of which was expressed in the

title, where it appeared that the statute was not only a police measure, but designed to raise revenue by license fees for the purpose of maintaining public roads. Smith v. Commonwealth (1917) 175 Ky. 286, 194 S. W. 367. See to the same effect, State v. Ingalls (1913) 18 N. M. 211, 135 P. 1177."

The act above referred to was superseded by chapter 19, Laws of 1913, being:

"An act to provide for state license on motor vehicles, providing for the registration, and regulating the operation, use and speed thereof, prescribing penalties and liabilities for violations of the act, and repealing chapter 28, Laws of 1912."

In this act the regulatory features were enlarged, covering requirements as to brakes, lights, signals, speed, rules of the road, and in section 13 thereof provided:

"Any person who shall operate a motor vehicle while in an intoxicated condition, or any owner of a motor vehicle who shall permit any person under the age of fourteen years to operate any motor vehicle, or any person who shall operate a motor vehicle, without a number or license as provided for in this act, or who shall violate any other provisions of this act for which no punishment has been provided, upon conviction thereof shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment for not less than thirty or more than ninety days, or both."

"Any person operating a motor vehicle by which injury is caused accidentally or otherwise to any person, who shall fail to stop and tender assistance to such injured person, or to give his name, residence and the number of his motor vehicle to the person injured thereby, or who shall fail to report such accident or injury to the nearest police officer or magistrate, upon conviction thereof shall be punished by a fine not exceeding five hundred dollars, or by imprisonment for a term not exceeding six months, or both."

"Any person who shall willfully make any false statement in order to secure a license such as is provided for in this act, upon conviction thereof shall be punished by a fine not exceeding one hundred dollars, or by imprisonment nor (not) exceeding ninety days, or both."

The foregoing section is carried into the codification of 1915 as section 391. Appellant argues that, if section 26 of chapter 150, Laws of 1919, is declared unconstitutional, we would still have left said section 391. If this is correct, then the Legislature in 1919 created no new crime, but merely made the penalty for the violation thereof more severe. It will be noted that the title to this act was a more specific index to the subject of the legislation than

the title to chapter 28, Laws 1912; that is, it is more clearly indicated that the statute was of a regulatory character. The act now under consideration (chapter 150, Laws of 1919) employed all of the words of the title of the 1913 act, and added additional words. It is appellant's argument that the main purpose of the act is to provide for state licensing of motor vehicles and that "regulating the operation, use and speed thereof" is a mere incident to the main purpose, and, if germane to such main purpose, such incidental purpose could not invoke the police power of the state, to make it a felony to operate or attempt to operate a motor vehicle while in an intoxicated condition; in other words, it seems to be the view of the appellant that the paramount object of the legislation was to secure revenue. We think the subject of the act was clearly the regulating of the operation, use, and speed of motor vehicles upon the public highways of this state and that these licensing and registration and other restrictive provisions of the act are connected with such subject as incidents thereto and are intended to contribute to an efficient regulation of such operation and use. A regulation means:

"A rule of order prescribed by a superior or competent authority, relating to the action of those under its control; a governing direction; precept; law (as police regulation); any rule for the ordering of affairs, public or private." Babbitt on Law of Motor Vehicles (2d Ed.) § 182.

The power to regulate has very usually been construed to include the power to restrain and seems also to prohibit, within certain limits, although perhaps not to prohibit entirely the thing which is the subject of the regulation. In Williams v. State, 48 Ind. 306, 308, it was decided that, within the meaning of the Constitution requiring that the subject of every act of the Legislature shall be stated in the title, the title, "To Regulate the Sale of Intoxicating Liquors, etc.," sufficiently expresses the subject of an act prohibiting the sale of such liquors to minors and to such persons in the habit of getting intoxicated; such matters being properly included within the subject of regulating the sale.

In State ex. rel. Woodward v. Skeggs, 154 Ala. 249, 46

So. 268, 273, it was decided that "regulation" and "prohibition" are distinct and incongruous subjects of legislation. The prohibitory act is not unconstitutional on the ground that the exceptions created by the act provided the methods whereby those exceptions may be availed of without violating the major purpose of the act, and contains the subject of regulations, as well as the subject of prohibition of dealing with intoxicants foreshadowed in the title, for, while in a sense a regulation is accomplished by the act, it is only a method by which the universal prohibition is bereft of its penalizing qualities by affording exceptions to those who comply with the act.

The foregoing are illustrations of the application of the principles to the liquor laws, but we found occasion to draw a similar analogy in the case of State v. Ingalls, supra.

Johnson v. Sergeant, 168 Mich. 444, 134 N. W. 468, was a case involving the sufficiency of the title of an act (Pub. Acts 1909, No. 318), entitled "an act providing for the registration, identification and regulation of motor vehicles, operated upon the public highways * * * and of the operators of such vehicles," the court holding the title sufficiently broad to include in the body of the act provisions imposing a civil liability for violations of the regulations prescribed. The court said:

"In Westgate v. Adrain Tp., 161 Mich. 333, 126 N. W. 422, many authorities are gathered, bearing upon the subject of titles to acts. In that case it was said: 'It will be noted that the original title contains the word "regulate." Under that term, very broad powers may be exercised. It means both government and restriction'—citing several authorities. The title to the act before us has the words 'Regulation of motor vehicles operated upon the public highways of this state and of the operators of such vehicles.' This language certainly suggests to an automobile owner that the provisions of the act were likely to interest him."

We do not attach any particular force to the language of the title of the Michigan statute with reference to the regulation of the operators of motor vehicles, as well as regulation of motor vehicles operated on the public highways. The title to our act under consideration relates to regulating the operation, use, and speed of motor vehicles, and it is difficult to understand how the operation of the

vehicles could be governed or regulated without imposing regulations and restrictions upon the operators thereof; and we may here observe that our statute does not operate as a prohibition against *persons* operating motor vehicles, but only against persons who are intoxicated. It is apparent that one of the purposes in view in the act, as a part of the regulatory policy, suggested by the title, was to render travel safe on the public highways. It is readily apparent that the provision to prohibit driving by intoxicated persons is appropriate for the accomplishment of such purpose, and therefore sufficiently indicated by the title.

It is not necessary for us now to decide as to the status of the provision making it unlawful for a person knowingly and willfully to accompany an intoxicated person who is operating a motor vehicle. It may be observed that the Legislature deemed it adapted to secure the object indicated in the title. It will be time enough to consider that provision when a case is presented involving a conviction under it. Appellant seeks to challenge our decision as to this portion of said section 26, on the ground that, if either of the offenses defined in said section is not clearly expressed in the title of the act, the entire section must be declared void, and cites Harrison v. State, 136 Tenn. 229, 188 S. W. 941, in support of his contention. It is to be noted, however, that the section of the Tennessee Constitution there under consideration does not contain the saving clause contained in section 16 of article 4 of our Constitution, to-wit:

"But if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void."

In Mosier v. State (1921) 90 Tex. Cr. R. 136, 234 S. W. 225, appellant was convicted of a violation of the provisions of an act making it an offense to fail to stop and render the necessary assistance to one struck by an automobile operated by an accused, and his punishment fixed at three years in the Penitentiary. The appellant set up the unconstitutionality of the law, claiming that the act in question embraced more than one subject. The court decided:.

"Under the liberal construction given by our Constitution to this character of questions, and especially in construing section 35 of article 3 of our Constitution, all subjects incidental to, auxiliary of, or that in any way tend to effectuate, the general purpose and scope of a bill, are held to be comprehended thereby; and we would hold that a bill whose purpose as stated in its caption was to regulate the use and operation of automobiles on the public highways, which contained a provision penalizing persons operating an automobile, who struck and injured other persons, and then failed to stop and render the assistance pointed out, in the terms of the section in question, was not obnoxious to our Constitution, which forbids the passage of bills by our Legislature which embrace more than one subject."

We have read the authorities cited by appellant and do not deem them controlling or persuasive.

It follows from all of the foregoing that there is no error in the judgment of the district court, and it should be affirmed, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.

### ON MOTION FOR REHEARING.

BICKLEY, J. ▇▇▇ We do not mean by any of the argument in the foregoing opinion to imply that a measure for the imposition of taxes could be combined with an unrelated regulatory measure in the same act under a title setting forth each of those subjects.

Our attention has been called to Vernor v. Secretary of State (1914) 179 Mich. 157, 146 N. W. 338, Ann. Cas. 1915D, 128, in which the court reached a conclusion opposite to ours. Without attempting to distinguish that case, we call attention to the fact that the title of the Michigan statute was later amended so as to read as follows:

"An act to provide for the registration, identification and regulation of motor vehicles operated upon the public highways of this state and of the operators of such vehicles and to provide for levying specific taxes upon such vehicles so operated and to provide for the disposition of such funds and to exempt from all other taxation such motor vehicles so specifically taxed, registered, identified and regulated and to repeal all other acts or parts of acts inconsistent herewith or contrary hereto." Act No. 302 of 1915.

The validity of the act was assailed in Jasnowski v. Board of Assessors (1916) 191 Mich. 287, 157 N. W.

891, because the Legislature failed to observe the requirements of the Michigan Constitution that "no law shall embrace more than one object."

We quote at length from the opinion in that case, because it answers the contention of appellant that the clause of the title of the act in question, "to provide for state licensing of motor vehicles," is a distinct "subject" from that expressed in the remainder of the title dealing with regulation, use, and speed of motor vehicles, etc. The court said:

"It is pointed out that this title provides for both regulation and taxation—two distinct objects. Whether the act shall be declared invalid on this ground must turn upon the nature of the tax which the act imposes. Should the several provisions of the act relating to taxation be adjudged a property tax, counsel's objection would be a serious one. If, however, the provisions be construed as an occupation or privilege tax, the act would not be open to that objection. The Legislature, in the exercise of the police power of the state, may enact a regulatory statute in which regulation and taxation are so blended as to have but a single purpose. An illustration of this may be found in the liquor law of 1887 (Act No. 313, Pub. Acts 1887), which was an act providing for the 'regulation and taxation' of the liquor traffic. The title to that act was assailed on the same ground as the present one, but this court approved it in Robison v. Miner, 68 Mich. 549 (37 N. W. 21). A careful study of the various provisions of the act persuades us that a privilege tax was intended rather than a property tax. The tax is not imposed upon the property, but upon the privilege of operating a motor vehicle upon the highway. That it was not intended by the Legislature to impose a property tax is evidenced in part by the fact that one may own one or more motor vehicles and have them in his possession, and they will not be subject to the provisions of the act, unless he chooses to operate them upon the highway. And a person who is not the owner of a motor vehicle is liable for the tax if he operates one upon the highway for a period greater than 30 days. The act provides that motor vehicles in stock owned by manufacturers, except those vehicles licensed to go upon the highway, shall be subject to the personal property tax. The act provides for no exemption from the payment of this tax, even though the owner has theretofore paid a property tax on his motor vehicle. These and other like considerations tend to characterize the act as one imposing a tax for the privilege of operating motor vehicles upon the public highways of the state. In view of these considerations we are of the opinion that the tax imposed is a privilege tax and is one of the regulatory features of the act. This being so the objection that the title gives notice of two distinct objects is without force."

To the same effect, see Commonwealth ex rel. Bell v. Powell (1915) 249 Pa. 144, 94 A. 746.

The motion for a rehearing is denied, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.