STAVER & ABBOTT MANUFACTURING CO. *v.* BLAKE.

1. Partnership Associations—Irregularity in Organization—Individual Liability of Members.

   One who enters into a contract with an association organized under 1 How. Stat. chap. 79, relative to partnership associations, limited, relying entirely on an associate liability, does not acquire the right to maintain an action of *assumpsit* thereon against the individual stockholders by the discovery of some irregularity or defect in the original organization or subsequent management of the association; especially if the persons whose liability is sought to be enforced were not interested in the association at its organization, and were not aware of any irregularities.

2. Same—Associate Name—Omission of Word "Limited"—Damages.

   The omission in a single instance of the word "limited" in the use of the associate name does not give a right of action under section 3 of the act authorizing the formation of such associations, providing that such omission shall render each member liable for any indebtedness, damage, or liability arising therefrom, unless some indebtedness, damage, or liability is shown to have resulted in consequence of the omission in the particular instance.

Error to Kent; Grove, J. Submitted April 28, 1896. Reargued October 6, 1896. Decided December 24, 1896.

*Assumpsit* by the Staver & Abbott Manufacturing Company against Katherine A. Blake and others, stockholders in the Grand Rapids Storage & Transfer Company, Limited, for goods sold and delivered to such association. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Wylie & Clapperton* (*Bundy & Travis*, of counsel), *Vernon H. Smith* and *FitzGerald & Barry*, *amici curiæ*, for appellant.

*Charles B. Blair* (*Fletcher & Wanty*, of counsel), *Otto Kirchner*, *amicus curiæ*, for appellees.

GRANT, J. The defendants are the members and owners of the stock of the Grand Rapids Storage & Transfer Company, Limited, an association organized May 13, 1890, under chapter 79, 1 How. Stat. The plaintiff is a manufacturing corporation of Chicago, Ill. It sues for merchandise alleged to have been sold and delivered to the defendants. The declaration is upon the common counts. The bill of particulars is for merchandise sold, for which notes were given, "executed by the name of Grand Rapids Storage & Transfer Company, Limited," dated January, May, and July, 1895. No claim is made that these defendants made individual promises, upon the faith of which these goods were sold and delivered, or that they had ever expressly formed a partnership, or that they had ever held themselves out to plaintiff as copartners. The sole basis for the right of recovery against them is the failure of the original organizers to comply with the statute in organizing, and non-compliance with the statute in carrying on the business after it was organized. These defects are stated by the learned counsel to be as follows:

(1) The articles did not state when and how $7,000 was to be paid.

(2) They falsely stated that $13,000 in cash had been paid in, when, as a matter of fact, property instead of money had been paid in, without any schedule containing the names of the parties contributing, with a description and valuation of the property contributed.

(3) No yearly or other meetings of the members of the association were held for five years.

(4) No managers of the association were elected for upwards of five years.

(5) No subscription book was kept, as required by the statute.

(6) The statute was not observed in the matter of contracting debts.

(7) The statute was not observed in using the word "Limited" in connection with the associate name.

The defendants contend:

(1) That the company was properly organized.

(2) That the plaintiff was estopped to deny that the association was legally organized, and to assert partnership relations, because it dealt exclusively with the association, and not with its members as a partnership.

(3) That partnership associations limited are corporations.

(4) That the express penalties imposed by the statute for its violation exclude all others.

(5) That these defendants are subsequent stockholders, are innocent purchasers, and therefore not liable for irregularities in the organization of the association, or its management.

1. The Original Organization.

There is no evidence of any dishonesty or bad faith in the formation of this association. It was organized under the advice of eminent counsel, who drew the articles. On March 29, 1890, eight citizens of Grand Rapids signed an agreement to form an association to be known as the Grand Rapids Storage & Transfer Company, Limited. This agreement specified the amount each was to contribute. $12,800 was thus contributed, and, when the articles were formed, this was so stated therein. This money was invested in the purchase of property and the erection of a building for the business of the association. The capital stock was fixed at $20,000. $7,200 remained unpaid, and the articles did not specify when or how it should be paid. Technically, the $12,800 of capital was not paid in cash at the time of the execution of the articles. It was, however, paid in shortly before, and for the purpose of, forming the association, and had been expended in the purchase of property for it, and to use in its business.

Subsequent Management.

It is true that meetings were not held, and managers

elected, and debts incurred, in strict compliance with the statute. The business was conducted in the name of the association, and without any fraudulent intent or acts.

2. The Provisions of the Law.

This act was passed in 1877, and is entitled:

" An act authorizing the formation of partnership. associations, in which the capital subscribed shall alone be responsible for the debts of the association, except under certain circumstances."

Section 1 declares that—

" The capital shall alone be liable for the debts of such association. * * * Contributions to the capital stock may be made in real or personal estate, at a valuation to be approved by all the members subscribing to the capital of such association."

It also requires a schedule containing the names of such contributors, and a description and valuation of the property so contributed. Section 2 provides that the members shall not be liable on any judgment, decree, or order which shall be obtained against such association, or for any debt or engagement of such company, otherwise than is provided by the act. This section further provides for proceedings in such cases, and makes the members liable for labor debts. It limits the liabilities of stockholders to the amount of their unpaid subscriptions, and requires a subscription list to be kept, which shall be open to inspection by creditors and members at all reasonable times. Section 6 prohibits division of profits to diminish or impair the capital of the association, and makes any one consenting to such a division liable to any persons interested or injured thereby, "to the amount of such diminution or impairment." Section 3 provides that—

" The omission of the word 'Limited' in the use of the name of the partnership association shall render each and every member of such partnership liable for any indebtedness, damage, or liability arising therefrom."

3. Plaintiff's action is based upon contract, not upon tort. It insists that the letter of the law, in the formation and conduct of the partnership association limited, has not been complied with, and that therefore the law makes the defendants either partners, or members of a joint-stock company at the common law, and therefore individually liable. None of these defendants were interested in this association at its organization. The husband of Mrs. Blake was one of the principal stockholders. She advanced to him the money which he originally paid in, and also the money with which he purchased, soon after the organization, most of the other stock. The stock was assigned to her as security. Subsequently, she discharged the liability of her husband, and took the stock, and now owns all but $200 worth, owned by the defendants Aldrich and Pantlind. None of these were aware of any irregularity in the original organization or in its subsequent management. Plaintiff had for several years dealt with this association as such. Its correspondence was carried on with it. Its contracts were made with it. It had no belief that it was making any contract with these defendants, or that they were individually liable, for the correspondence and course of business refute any such conclusion. The very name of the association implied a warning to plaintiff that it was not dealing with the members or stockholders of this association in their individual capacity, but in their associate capacity, with their liability limited. It is presumed to know the law, and a reading of the statute would have shown it that the members of this association could only be held liable for the amount of stock subscribed. It therefore dealt with this association with full knowledge of the extent of the liability of its members. The liability fixed by statute is still open to it. If the managers or members of the association committed a fraud by which the plaintiff or any other creditor suffered damage, the law provides a remedy in tort, but not in contract. The law does not make contracts for parties. The law

takes the contracts which have been made, and interprets them. The law does not permit A. to deal and make contracts with B. in one capacity, and then hold him liable in another. A partnership can only be held to exist *inter sese* when the parties have so agreed. When no such partnership in fact exists, but a party has held himself out as such to third persons, who have dealt with him upon the faith of that relation, the law estops him to assert the true relation in order to avoid liability. Under no other circumstances does the law hold one liable as a partner who is not in fact a partner. This court said, speaking through Justice COOLEY, in *Beecher* v. *Bush*, 45 Mich. 193 (40 Am. Rep. 465):

"If parties intend no partnership, the courts should give effect to their intent, unless somebody has been deceived by their acting, or assuming to act, as partners; and any such case must stand upon its peculiar facts, and upon special equities."

See, also, *Webb* v. *Johnson*, 95 Mich. 330. We cite no other authorities, as the rule is elementary.

These defendants have never agreed to be partners, and have never held themselves out to plaintiff or to the world as such. By the purchase of stock, they became members of a body, organized under a law which made its capital and assets alone liable for its debts. This is the legal entity—and it is immaterial what name you give it—with which plaintiff dealt, made contracts, and to which it gave credit. The statute contains not a sentence from which any individual or partnership liability can be inferred. Upon what principle of common sense, justice, or equity can it now be held that plaintiff, having trusted this entity, can recover its entire debt from one with whom it never contracted, and who never promised to pay? It is unnecessary to determine whether these associations are corporations under our Constitution, which provides that the term "corporations" "shall be construed to include all associations and joint-stock companies having any of the powers or privileges of corpora-

tions not possessed by individuals or partnerships."
Article 15, § 11. It is the established rule that those
dealing with corporations are estopped to deny the lawful
existence thereof, and cannot, therefore, hold the stock-
holders individually liable, unless such liability is imposed
by the statute. This rule is based upon two grounds:
(1) That it is against public policy to permit the existence
of these corporations to be attacked collaterally in suits
between them and others. It is reserved for the State
alone to question their legal existence through its law de-
partment. (2) Because parties have dealt with it as a cor-
poration, and not upon the faith of the individual liability
of its stockholders. We see no reason why the doctrine of
estoppel should not be applied in the one case as well as in
the other. There is no difference in principle between the
two. Each is a legal entity, whose sole warrant for exist-
ence is found in, and whose powers and liabilities are
fixed by, statute. The doctrine of estoppel in this case
need not, however, be based upon the determination of
the question as to whether the Grand Rapids Storage &
Transfer Company, Limited, was a corporation. If these
defendants, in the absence of any statute, had associated
themselves together upon the same terms as those pro-
vided by this statute, had limited their liability in the
same manner and for the same amount, had furnished
plaintiff with a copy of that agreement, and it had sold
them goods, the law would not permit it to recover
against them, either as individuals or as partners. It had
dealt with them and trusted them upon the strength of
their limited liability. It had agreed to look to this alone,
and the law will hold it to its undertaking. This rule is
founded in good morals, as well as good law. The policy
of the law for partnership associations limited is to relax
the common-law rule, to permit parties to limit their lia-
bility, and exempt themselves from a liability which may
be ruinous. Whether the policy is wise or unwise is a
question for the legislature, and not for the courts.

The injustice in sustaining the plaintiff's contention is

manifest.  The law, as construed by counsel for plaintiff, says to A., who does not wish to actively engage in business, and be held responsible for its management: "You may invest $1,000 in the stock of one of these associations; and, although the law limits your liability to the amount of capital subscribed, still if there has been any defect, however innocently made, in the original articles of association, or in its subsequent management, you can be held liable for all the debts of the association."  Such a rule is not founded in justice, common sense, sound logic, or good morals.  Even in construing the statutes for the formation of limited partnerships, no such harsh rule is always applied.  *Buck* v. *Alley*, 145 N. Y. 488, 496.  The law of Michigan prohibited a corporation from doing any business before filing its articles of association.  A corporation was formed under this law, but, before it had completed its organization by filing its articles, its prudential committee purchased goods.  Suit was brought against this committee, who were directors, based upon the personal liability of the members.  The court, in deciding the case, said:

" It seems to us entirely clear that both parties understood and meant that the contract was to be, and in fact was, with the corporation, and not with the defendants individually.  The agreement thus made could not be afterwards changed by either of the parties without the consent of the other.  *Utley* v. *Donaldson*, 94 U. S. 29.  * * *  The corporation having assumed, by entering into the contract with the plaintiff, to have the requisite power, both parties are estopped to deny it." *Whitney* v. *Wyman*, 101 U. S. 392, 396.

See, also, *American Mirror & Glass-Beveling Co.* v. *Bulkley*, 107 Mich. 447.

We are aware that this decision is not in harmony with the decisions of the supreme court of Pennsylvania, but in so far as those decisions adopt the rigorous rule that the members of these associations are liable as partners

111 MICH.—19.

because of some irregularity or defect in their organization or management, and thereby read into the statute a penalty which it does not impose, but which, by a fair construction of the statute, is excluded, we cannot follow them.

Other interesting and important questions are raised and ably discussed by counsel, but, inasmuch as the entire controversy is disposed of by the above opinion, we refrain from discussing them.

In one instance, in dealing with the plaintiff, the manager of this association omitted the word "Limited." No testimony was introduced on the part of plaintiff to show that any "indebtedness, damage, or liability" arose to it in consequence of this single act, and therefore no right of action from this cause was shown to exist.

The judgment is affirmed.

LONG, C. J., HOOKER and MOORE, JJ., concurred. MONTGOMERY, J., did not sit.