UNION TRUST CO. *v.* COMMON COUNCIL OF CITY OF DETROIT.

1. TAXATION — SPECIFIC TAX — LAND CONTRACTS — MORTGAGES — STATUTES.

   The specific tax on mortgages and land contracts imposed by Act No. 91, Pub. Acts 1911, is in lieu of all other general taxes, including city assessments.

2. SAME—DETROIT CHARTER—MUNICIPAL CORPORATIONS.

   Provisions of the charter of the city of Detroit authorizing said city to levy taxes upon all property made taxable for State purposes includes only property subject to State and county taxes, not mortgages and contracts paying the specific tax. Detroit Charter, sec. 59, chap. 7.

3. SAME—CONSTITUTIONAL LAW—EXEMPTIONS—UNIFORMITY—EDUCATIONAL, CHARITABLE AND RELIGIOUS INSTITUTIONS.

   Said act is not unconstitutional for violating Art. 10, § 4, of the Constitution, requiring specific taxes to be uniform; the objection that the exemption of mortgages, etc., upon property of religious, charitable and other like societies, violates the rule, is not sustained.

4. SAME—MORTGAGES INCLUDED—TIME.

   Section 2 of said act includes only mortgages recorded on or after January 1, 1912; the provisos following are to be understood as referring to the same class, and exempt from all taxes mortgages thereafter recorded affecting property of such religious, charitable, and educational institutions.

5. SAME—CORPORATIONS—STOCK AND STOCKHOLDERS.

   In assessing a trust company upon its capital, surplus, and undivided profits, deduction should be made of all funds invested in stocks of corporations which pay taxes upon realty and personalty.

6. SAME—PARTNERSHIP ASSOCIATIONS.

   Stock of partnership associations, limited, are subject to the same rule under Art. 12, § 2, of the Constitution.

7. SAME—TRUST COMPANIES—ILLEGALITY OF INVESTMENT.

   If the trust company illegally invests funds in stock of incorporated associations, exempt from taxation, the remedy is by direct proceedings against the company, not by exercising the taxing power.

Certiorari to Wayne; Hally, J. Submitted June 18, 1912. (Calendar No. 25,223.) Decided July 10, 1912.

Mandamus by the Union Trust Company against the common council and assessors of the city of Detroit to compel respondents to deduct from relator's assessed property the value of certain mortgages and other credits of relator. An order granting the writ is reviewed by respondents on certiorari. Affirmed.

*Walter Barlow* (*Richard I. Lawson*, of counsel), for appellants.

*Campbell, Bulkley & Ledyard, Henry M. Campbell*, and *Henry Ledyard*, for appellee.

STONE, J. The relator by petition asked the circuit court of Wayne county to issue a writ of mandamus to compel the common council of the city of Detroit, sitting as a board of assessors, to deduct for taxation purposes from its capital stock, surplus, and undivided profits the items of $655,243.23 of real estate mortgages upon which the specific mortgage tax of one-half of 1 per cent. has been paid to the county treasurer, and $64,947.02 of land contracts on which said tax has been paid to said county treasurer, and $192,295 of stocks claimed to be owned by it in Michigan corporations which pay taxes on their property in this State. The circuit court granted the writ as prayed for by the relator in so far as the foregoing items are concerned, and denied the writ as to an item of $250,000 represented in the capital stock, surplus, and undivided profits of relator by its abstract department, and the relator has not appealed from such denial, hence we shall treat the last item as eliminated from our consideration.

The respondents have sued out the writ of certiorari to review the action of the court below in granting the writ of mandamus compelling the respondents to strike from the assessment roll said items of $655,243.23 and $64,947.02 and $192,295 in assessing the relator on its capital stock,

surplus, and undivided profits for taxes for the year 1912. The respondents say that the case presents two questions for consideration.    One is whether or not trust companies can use mortgages, executory contracts for the sale of real property, and deeds or other instruments that are given to secure debts upon which the specific tax provided for by Act No. 91, Pub. Acts 1911, has been paid to the county treasurer, as an offset against their capital stock, surplus, and undivided profits, in making their annual personal tax statements to the board of assessors of the city of Detroit, to reduce the assessment of their personal taxes thereon.    The second question is whether or not the relator can use the stocks owned by it in other Michigan corporations which pay taxes in Michigan on their property as an offset against its capital stock, surplus, and undivided profits to reduce its personal taxes assessed on such stock, surplus, and undivided profits.

The first two sections of Act No. 91 are as follows:

"SECTION 1. For the purposes of this act all indebtedness secured by liens upon real property shall constitute that class of credit upon which this act imposes a specific tax.    The word 'mortgage' as used herein shall include every mortgage or other instrument by which a lien is created over or imposed upon real property, notwithstanding it may also be a lien upon other property, or there may be other security for the debt, and shall also include executory contracts for the sale of real property, and deeds or other instruments that are given to secure debts.

"SEC. 2. A tax of fifty cents for each one hundred dollars and each remaining major fraction thereof of the principal debt or obligation which is, or under any contingency may be, secured by a mortgage upon real property situated within this State recorded on or after the first day of January, nineteen hundred twelve, is hereby imposed on each such mortgage, and shall be collected and paid as hereinafter provided:    *Provided*, that no tax shall be imposed upon any debt or obligation which is, or under any contingency may be, secured by a mortgage upon such real estate as shall be owned and occupied by library, armory, benevolent, charitable, educational and scientific institutions, incorporated under the laws of this State,

with the buildings and other property thereon, while occupied by them solely for the purposes for which they were incorporated: *Provided*, that such exemption shall not apply to fraternal or secret societies, but all charitable homes of such societies shall be exempt: *Provided, further*, that no tax shall be imposed upon any debt or obligation which is, or under any contingency may be, secured by a mortgage upon any house of public worship with the land on which it stands, the furniture therein and all rights in the pews, and upon any parsonage owned by any religious society of this State and occupied as such; which such mortgage is recorded on or after the first day of January, nineteen hundred twelve: *Provided further*, no tax shall be imposed upon any building and loan mortgage. The tax imposed by this section shall be in addition to the recording fee now provided for by law."

Section 6 is as follows:

"The owner of any mortgage which is now, or which may be recorded before this act takes effect, may present to the county treasurer of the county in which said property is situated an affidavit setting forth the mortgage and the place of record thereof and the amount of principal secured thereby which is unpaid, and may pay a like tax of one-half of one per cent. upon such amount, and thereafter said mortgage for the purpose of taxation is to be considered and treated the same as other mortgages provided for in this act. Said affidavit shall be recorded in the office of the register of deeds and shall be *prima facie* proof of the amount of the principal unpaid on said mortgage. Mortgages given prior to January 1st, nineteen hundred twelve, and on which the registry tax provided for in this act shall not be paid, shall remain under the present *ad valorem* system of taxation and shall be assessed and taxed under the present law."

Section 10 is as follows:

"That class of credits other than the mortgages given prior to January first, nineteen hundred twelve, upon which this act imposes a specific tax shall be exempt from further general taxes under the laws of this State. All acts and parts of acts in contravention of the provisions of this act are hereby repealed."

It is the claim of respondents that this act is at most

only an act to provide for the collection of a specific tax on such instruments for State and county purposes, and in no way applies to the assessment of taxes in the city of Detroit for the general purposes of the municipal government, and that, having failed to provide for city, township, school district, village, and other municipal taxes, is void for want of uniformity of taxation, under Const. art. 10, § 3. We cannot agree with the claim that the act does not apply to the assessment of taxes for general purposes. We have quoted section 10, which provides that mortgages and land contracts upon which the act imposes a specific tax shall be "exempt from further general taxation under the laws of this State." The history of the adoption of this act is a matter of common knowledge. It is well claimed by relator that mortgages and like instruments had been concealed from assessing officers by putting them in the names of nonresidents, withholding them from record, and other familiar means, and it was urged that if a special tax could be imposed upon these instruments when they were recorded, and their foreclosure made dependent upon their having been recorded, and the tax made sufficiently low in amount, there would be an inducement to disclose mortgages to the assessing officer, rather than hide them as theretofore. With this end in view, the act was passed, and the universal acceptation throughout the State is that mortgages recorded under its terms are then exempt from other taxation. We are of opinion that the phraseology of the act amply sustains this view. We think that the exemption is from all *ad valorem* taxation.

An examination of the charter of the city of Detroit satisfies us that it does not give the common council power to tax any property other than that made taxable under the laws of the State for State purposes. The power of the common council to assess and collect taxes is given in section 59, chap. 7, of the charter, as follows:

"Said council shall also have power * * * to assess, levy and collect taxes for the purposes of the corporation

upon all property made taxable by the law for State purposes."

Section 2, chap. 10, provides:

"The board of assessors shall, before the first day of April in each fiscal year, assess at its true cash value all the real and personal property subject to taxation by the laws of this State."

Under the general scheme of taxation in force in the city of Detroit, it seems to us clear that nothing can be placed on. the rolls for taxation which cannot legally be taxed for State and county purposes. We conclude that these tax-paid mortgages and contracts are exempt from city taxation.

It is contended by counsel for respondents that this act is unconstitutional because the various provisions contained in section 2 provide for exemption from all taxation, recorded or otherwise, of mortgages and land contracts held by various educational, charitable, and religious societies, etc., his claim being that said exemptions made the scheme of taxation afforded by the act violate the constitutional rule of uniformity of taxation under article 10, § 4, of the Constitution. We cannot agree with this contention. While the provision respecting uniformity is new as relates to specific taxes, it has long existed with regard to *ad valorem* taxes, and the question whether or not any particular act providing for a specific tax offends against the uniformity rule can be answered by our decisions. In the early case of *People* v. *Auditor General*, 7 Mich., at page 90, it was said:

" This provision of the Constitution (uniform rule of taxation) has no reference to the power to exempt, or to remit taxes; which is, and necessarily must be, to a great extent, left to the discretion of the legislature. Its design was to secure, to every portion of the State, and to every class of property taxed, a uniform rate—to secure equality, so that property in one quarter should not be taxed at a higher rate than in another, or the same kind taxed unequally. The legislature has the power of prescribing the subjects of taxation, and of exemption, but it cannot arbi-

trarily tax property according to locality, kind, or quality, without regard to value (Sedg. on Stat. 557), but in this respect it must act by uniform rules. But to exempt property, as is done in the case of church, school, or library property, or to remit taxes for any cause, has nothing to do with the uniformity of the rule of taxation."

*Walcott* v. *People*, 17 Mich. 68–92; *National Loan & Investment Co.* v. *City of Detroit*, 136 Mich. 451 (99 N. W. 380). We refrain from quoting authorities outside of this State upon this question. The same reasons which impel the exemptions as to the property of such institutions would naturally apply to their obligations. The fact that their obligations would be exempt from taxation would be a great aid in making loans and negotiating their mortgages. The circuit judge in his opinion seems to claim a distinction between the treatment accorded obligations secured by mortgage under the first proviso and those secured by mortgage under the second. We cannot agree with him in this. Section 2 in its controlling, general terms at the beginning refers solely to mortgages recorded on or after January 1, 1912. No other description of mortgages is mentioned. The provisos in the section can only be understood as referring to, and limiting, the general terms previously used. The specific terms of the first proviso cannot be construed as referring to mortgages, no matter when recorded, when the language which it is intended to limit refers to mortgages recorded on or after January 1, 1912. It follows that the language near the bottom of the section, "which such mortgage is recorded on or after the first day of January, nineteen hundred twelve," is pure repetition and surplusage, adding nothing to, and deducting nothing from, the meaning of the section, which is that all obligations secured by mortgages recorded on or after January 1, 1912, shall pay a specific tax in lieu of *ad valorem* taxes, except that certain specified obligations recorded on or after that date shall not pay any tax. We are of opinion that no part of section 2 con-

travenes the provisions of section 4, art. 10, of the Constitution.

We cannot follow counsel for respondents in his criticism of section 6, which provides for bringing mortgages recorded prior to January 1, 1912, within the provisions of the act. What we have said as to uniformity of taxation applicable to section 2, applies here.

This brings us to the second question raised by respondents, whether or not the relator can use the stocks owned by it in other Michigan corporations, which pay taxes in Michigan on their property, as an offset.

It is the claim of relator that, in so far as stocks in corporations are concerned, there can be no question that such stocks are exempt from taxation, and their value should be deducted from the taxable capital of relator. 1 Comp. Laws, § 3831, subd. 7:

"For the purposes of taxation, personal property shall include * * * (7) all shares in corporations organized under the laws of this State, when the property of such corporation is not exempt, or is not taxable to itself; or when the personal property is not taxed."

In the construction of this section due consideration should be given to section 3834, which provides that all corporate property, except where some other provision is made by law, shall be assessed to the corporation, in the name of the corporation. *Stroh* v. *City of Detroit*, 131 Mich. 109 (90 N. W. 1029); *Bacon* v. *Board of Tax Commissioners*, 126 Mich. 22 (85 N. W. 307, 60. L. R. A. 321, 86 Am. St. Rep. 524); *Thrall* v. *Guiney*, 141 Mich. 392 (104 N. W. 646, 113 Am. St. Rep. 528). We think that relator is right in this claim.

It is claimed that the same rule should be applied to the stock of partnership associations, limited; that such associations are considered legal entities, existing independently and apart from 'the members composing them, and are governed by the rules applicable to corporations, rather than by the rules applicable to unincorporated partnerships, citing *Staver & Abbott Manfg. Co.* v. *Blake,*

111 Mich. 282–287 (69 N. W. 508, 38 L. R. A. 798); *Rouse, Hazard & Co.* v. *Cycle Co.*, 111 Mich. 251 (69 N. W. 511, 38 L. R. A. 794). Our present Constitution, in section 2, art. 12, like the former Constitution, provides that:

"The term 'corporation' as used in this article shall be construed to include all associations and joint stock companies having any of the powers or privileges of corporations, not possessed by individuals or partnerships."

Stock and stockholders are recognized both in the Constitution and the statute.

It is further claimed by respondents that the investments of the relator in said limited partnership associations were unlawful and beyond its power to make, and the amount of its capital invested in said associations is taxable property. This point is, we think, ruled against the contention of respondents in *Detroit Home & Day School* v. *City of Detroit*, 76 Mich. 521 (43 N. W. 593, 6 L. R. A. 97), where it was held that, if any corporation misuses its funds, the remedy is not by the action of the assessing officers, who have no authority to punish it by taking away its exemption, but by direct proceedings to restrain and punish any corporate abuses. We are of opinion that the circuit court ruled correctly upon this branch of the case.

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.