REPUBLIC ACCEPTANCE CORPORATION v. DE LAND et al.

(District Court, E. D. Michigan, S. D. October 1, 1921.)

No. 420.

1. **Equity ⊕363—Allegations of complaint treated as true on motion to dismiss.**

On motion to dismiss a bill of complaint, allegations thereof must be accepted as true.

2. **Courts ⊕282(1)—Bill to enjoin enforcement of state statute as violative of federal Constitution arises under Constitution and laws of United States.**

A bill to restrain enforcement of a statute alleged to be in violation of the United States Constitution states a cause of action arising under the Constitution and laws of the United States.

3. **Courts ⊕303(2)—Federal court has jurisdiction to restrain state officers from enforcing unconstitutional statute.**

A federal court has jurisdiction to restrain officers of a state from enforcing as officers an unconstitutional statute of such state.

4. **Courts ⊕102(1)—District Court may pass on motion to dismiss bill to restrain state officers from enforcing statute.**

While the federal District Court is prohibited by Judicial Code, § 266 (Comp. St. § 1243), from granting an interlocutory injunction to restrain enforcement of a state statute, on ground that it is unconstitutional, without calling to its aid two other federal judges, nevertheless a District Judge has power to dispose of a motion to dismiss such a bil.

5. **Courts ⊕264(1)—Federal court has jurisdiction of all questions, where federal question involved.**

Where jurisdiction of federal court has been invoked by the presence of a substantial federal question, it extends to the determination of every question presented in the case, whether the decision of such question depends on federal or on state law.

6. **Corporations ⊕648—Compliance with statute and receipt of certificate by foreign corporation constituted contract.**

When a corporation from another state complied with Comp. Laws Mich. 1915, § 9066, and received certificate of authority to do business in the state in accordance with such provisions, the transaction constituted a contract between it and the state of Michigan, entitling it to carry on business in such state on the terms and conditions prescribed by such statute.

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Constitutional law ⚡126—Taxation ⚡13—State may levy license tax on corporation previously granted permission to carry on business.**

So long as a state has not deprived itself by contract or otherwise of the power to impose taxes on corporations subject to its laws, it may, consistently with the provision of the federal Constitution forbidding it to impair the obligations of contracts, levy on a corporation, domestic or foreign, previously granted permission to carry on business within such state, an excise tax on the privilege of exercising its corporate franchise and transacting its business there, and the state of Michigan did not impair obligation of contract in enacting Pub. Acts Mich. 1921, Nos. 84, 85, especially in view of Const. Mich. art. 12, § 1, permitting amendment, alteration, repeal, and abrogation of privileges conferred on corporations.

**8. Constitutional law ⚡70(3)—No judicial interference with classification of corporations for taxation, unless purely arbitrary.**

Unless there is such an entire absence of any reasonable basis for such a classification that it must be held purely arbitrary, and therefore discriminatory, a federal court cannot interfere with the exercise by a state Legislature of its judgment and discretion in grading the amount of excise tax which corporations must pay according to the amount of paid-up capital and surplus; correctness and wisdom of legislative judgment not being reviewable.

**9. Constitutional law ⚡229(1), 283—State statute, imposing excise tax on corporations according to capital and surplus, held not to lack uniformity.**

Pub. Acts, Mich. 1921, No. 85, § 4, imposing an excise tax on corporations of a certain per cent. of capital and surplus, but providing that the tax should in no case be less than $50 nor more than $10,000, is not unconstitutional, as violating the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

**10. Taxation ⚡40(5)—Specific tax on corporations held not to violate uniformity clause of state Constitution; "class."**

Pub. Acts Mich. 1921, No. 85, § 4, levying on corporations a specific excise tax of a certain per cent. of capital and surplus, with a minimum tax of $50 and a maximum of $10,000, does not violate Const. Mich. art. 10, § 4, providing that specific taxes shall be uniform on the classes on which they operate; corporations not constituting a "class" on which the tax operates, within the meaning of such provision.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Class.]

**11. Taxation ⚡40(2)—Tax on corporations held not "property tax."**

Pub. Acts Mich. 1921, No. 85, § 4, levying on corporations a tax of a certain per cent. of their capital and surplus, with a minimum tax of $50 and a maximum tax of $10,000, is not a "property tax," within the meaning of Const. Mich. art. 10, § 3, providing for a uniform rule of taxation, except on property paying specific taxes; the tax being an excise tax.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property Tax.]

**12. Taxation ⚡37—Michigan statute levying tax on corporations held invalid, as providing for payment into general fund, instead of into school fund.**

Pub. Acts, Mich. 1921, No. 85, providing for payment of a graduated tax by corporations for the privilege of doing business within the state, is unconstitutional, because it provides for the payment of the taxes into the general fund of the state, instead of into the primary school interest fund, as required by Const. Mich. art. 10, §§ 1, 6, in view of Comp. Laws Mich. 1915, § 11,354.

⚡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Republic Acceptance Corporation against Charles J. De Land and another. On motion to dismiss bill of complaint. Motion denied.

Beaumont, Smith & Harris, of Detroit, Mich., for plaintiff.

Merlin Wiley, Atty. Gen., and Samuel Pepper and Clare Retan, Asst. Attys. Gen., for defendants.

TUTTLE, District Judge. This cause is before the court on a motion to dismiss the bill of complaint. The grounds on which such motion is based are stated therein as follows:

"(1) That plaintiff has an adequate remedy at law. (2) That this court is without jurisdiction to entertain the same: (a) Because said bill of complaint does not state a cause of action arising under the Constitution and laws of the United States; (b) because this court is without jurisdiction to restrain the officers of the state of Michigan from enforcing the penal laws of the state; (c) because this court, under section 266 of the Judicial Code of the United States, is without jurisdiction to enjoin the enforcement of Acts Nos. 84 and 85 of the Public Acts of 1921 of the state of Michigan, on the ground that such acts, or any parts thereof, are in conflict with the Constitution of the United States and of the state of Michigan; (d) because plaintiff is not entitled to the relief prayed therein."

[1] 1. The bill, by appropriate allegations, clearly presents a situation showing that plaintiff will suffer irreparable injury unless the equitable relief therein prayed be granted, and as these allegations must, of course, be accepted as true for the purposes of this motion, it certainly cannot be said that it appears from the bill that plaintiff has an adequate remedy at law.

[2] 2. (a) As the bill alleges, on grounds hereinafter mentioned, that the statutes in question are in violation of the United States Constitution, it is clear that such bill states a cause of action arising under the Constitution and laws of the United States.

[3] (b) That a federal court has jurisdiction to restrain individuals who are officers of a state from enforcing, as such officers, an unconstitutional statute of such state, is too well settled to require discussion. Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Looney v. Crane Co., 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230.

[4] (c) While it is true that this court is prohibited by section 266 of the Judicial Code (Comp. St. § 1243) from granting an interlocutory injunction to restrain the enforcement of the statutes involved, on the ground that they are unconstitutional, without calling to its aid two other federal judges pursuant to, and in accordance with, the provisions of such section, yet it is equally true that this court has jurisdiction to grant a permanent injunction restraining the enforcement of such statutes on the grounds alleged in the bill, as it has the power to dispose of the motion to dismiss such bill.

(d) The contention that the bill of complaint should be dismissed, for the reason that it appears on its face that this court is without jurisdiction to entertain the same, "because plaintiff is not entitled to the relief prayed," requires a consideration of the various grounds upon which the prayer for such relief is based.

[5] It is alleged, with much particularity of detail, that the statutes referred to, Act No. 84 and Act No. 85 of the Michigan Public Acts of 1921, violate both the United States Constitution and the Constitution of the state of Michigan. It is, of course, well established that when, as here, the jurisdiction of this court has been invoked by the presence of a substantial federal question, such jurisdiction extends to the determination of every question presented in the case, whether the decision of such question depends upon federal or upon state law. Louisville & Nashville R. R. Co. v. Greene, 244 U. S. 522, 37 Sup. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97.

The objections urged in the bill against the constitutionality of the Michigan statutes involved may be summarized as follows:

(1) That said statutes impair, contrary to section 10 of article 1 of the federal Constitution, the obligations of the contract entered into between the state of Michigan and the plaintiff when and whereby the latter was admitted to do business in Michigan.

(2) That Act 85 violates the Fourteenth Amendment to the federal Constitution, in that such act levies an arbitrary, unjust, and capricious charge against the plaintiff, which operates, not only to deprive it of its property without due process of law, but also to deprive it of the equal protection of the laws.

(3) That, if the charge prescribed by said Act 85 be a specific tax, it violates section 4 of article 10 of the Michigan Constitution, as such tax is not uniform upon the classes upon which it operates.

(4) That said charge is in reality a property tax, which is not uniform, and which, therefore, is contrary to section 3 of article 10 of the Michigan Constitution.

(5) That Act 85 is in violation of the Michigan Constitution, because such act provides for the payment of the taxes therein prescribed into the general fund of the state, instead of into the primary school interest fund, as required by such Constitution.

These objections will be considered in the order named.

1. It is contended by plaintiff that these statutes would, if enforced, deprive plaintiff of rights previously acquired by it under its contract with the state of Michigan, admitting it to do business in such state, and that therefore such statutes impair the obligations of a contract, in violation of the first article of the federal Constitution.

Act 206 of the Michigan Public Acts of 1901 prescribed terms and conditions on which foreign corporations might be admitted to do business in Michigan. By that act it was made unlawful for any such corporation to carry on its business in Michigan until it had procured from the secretary of state a certificate of authority for that purpose, and in order to procure such certificate every such corporation was required to file certain papers as provided in such act and to pay to the secretary of state what was denominated a franchise fee of one-half a mill on each dollar of the proportion of its authorized capital stock represented by the tangible property owned and used in Michigan. Section 4 of that statute, being section 9066 of the Michigan Compiled Laws of 1915, provided, among other things, as follows:

"When such corporation has fully complied with the provisions of this act, the secretary of state may issue to such corporation a certificate of authority to carry on such business in this state during the period of its corporate existence, but not exceeding thirty years: Provided, that no such foreign corporation shall be permitted to transact business in this state, unless it be incorporated in whole or in part for the purpose or object for which a corporation may be formed under the laws of Michigan, and then only for such purpose or object. The secretary of state shall in the certificate which he issues state under what act such corporation is to carry on business in this state, and such corporation shall have all the powers, rights and privileges and be subject to all the restrictions, requirements and duties granted to or imposed upon corporations organized under such act."

[6] When plaintiff complied with the provisions of said statute, and received the certificate of authority issued to it in accordance with such provisions, as alleged in the bill, the transaction constituted a contract between it and the state of Michigan, entitling it to carry on business in such state on the terms and conditions prescribed by such statute. American Smelting & Refining Co. v. Colorado, 204 U. S. 103, 27 Sup. Ct. 198, 51 L. Ed. 393, 9 Ann. Cas. 978. It will be noted, however, that by the terms of such contract, as expressed in the provisions of the state statute just quoted, plaintiff was made "subject to all the restrictions, requirements and duties granted to or imposed upon" the domestic corporations therein mentioned.

[7] It is well settled that, so long as a state has not expressly and unequivocally deprived itself, by contract or otherwise, of the power to impose taxes upon corporations subject to its laws, it may, consistently with the provision of the federal Constitution forbidding it to impair the obligations of contracts, levy upon a corporation, domestic or foreign, previously granted permission to carry on business within such state, an excise tax in the nature of a license tax upon the privilege of exercising its corporate franchise and transacting its business there. Memphis Gaslight Co. v. Taxing District, 109 U. S. 398, 3 Sup. Ct. 205, 27 L. Ed. 976; New Orleans City & Lake R. R. Co. v. New Orleans, 143 U. S. 192, 12 Sup. Ct. 406, 36 L. Ed. 121; St. Louis v. United Railways Co., 210 U. S. 266, 28 Sup. Ct. 630, 52 L. Ed. 1054.

Section 4 of Act 85, prescribing the tax complained of, provides as follows:

"Every corporation organized or doing business under the laws of this state, excepting those hereinafter expressly exempted therefrom, shall, at the time of filing its annual report with the secretary of state of this state, as required by section seven hereof, for the privilege of exercising its franchise and of transacting its business within this state, pay to the secretary of state, an annual fee of three and one-half mills upon each dollar of its paid-up capital and surplus, but such privilege fee shall in no case be less than fifty dollars nor more than ten thousand dollars."

As the tax thus imposed (which, for reasons hereinafter expressed, is, in my opinion, an excise tax, within the power of the state to impose) is applied equally to domestic and foreign corporations, and as neither of the acts under consideration attempts to discriminate between domestic and foreign corporations, it is manifest that in levying such tax the state of Michigan has not impaired the obligation of any contract between it and the plaintiff. It follows that the contract re-

lied on by plaintiff was not impaired by the portion of Act 84 providing that:

"When such corporation has fully complied with the provisions of this act, the secretary of state may issue to such corporation a certificate of authority to carry on such business in this state for one year, and from year to year thereafter during the period of its corporate existence so long as the said corporation continues to pay its franchise fee and to otherwise comply with the laws of this state" (part 5, c. 1, § 2)

—notwithstanding the contention of plaintiff that the statutory provision just quoted violates the clause of its said contract entitling it to carry on its business in Michigan during the period of its corporate existence.

Aside from, and in addition to, the considerations just pointed out in this connection, the extent of the power of the state of Michigan to legislate with respect to the plaintiff corporation is indicated by section 1 of article 12 of the present Michigan Constitution, in force at the time of the admission of the plaintiff into said state, and therefore forming a part of the contract relative to such admission, which constitutional provision is as follows:

"All laws heretofore or hereafter passed by the Legislature for the formation of, or conferring rights, privileges or franchises upon corporations and all rights, privileges or franchises conferred by such laws may be amended, altered, repealed or abrogated."

In so far, therefore, as this contention is concerned, it appears on the face of the bill that plaintiff is not entitled to the relief thus prayed.

2. It is urged by plaintiff in its bill that it is deprived of property without due process of law and deprived of the equal protection of the laws, contrary to the Fourteenth Amendment to the federal Constitution, by the provision in section 4 of Act 85 that the tax thereby imposed "shall in no case be less than fifty dollars nor more than ten thousand dollars"; it being argued by plaintiff, in substance, that the effect of such proviso is to arbitrarily discriminate between corporations belonging to the same class, and to apply a different method of computing this tax upon different members of such class, determined solely by the amount of paid-up capital stock and surplus, and that this legislation is so arbitrary in character and unequal in application as to constitute class legislation, contrary to the Fourteenth Amendment.

[8] The constitutional power of a state to divide the persons upon whom legislation is to operate into classes, and to vary the nature and effect of such legislation according to the difference between such classes, is undoubted, provided that any lack of exact uniformity as between classes be based upon reasonable classification, and not upon arbitrary discrimination. I am satisfied that the effect of the proviso just quoted, prescribing a minimum and maximum amount of franchise tax, is to divide all of the corporations subject to such tax into three classes—the first containing those corporations whose paid-up capital and surplus together does not exceed the sum upon which the tax, computed at the rate prescribed in this section, amounts to $50; the second class containing those corporations whose paid-up capital and

surplus amounts to such a sum that the tax computed thereon at the same rate is not less than $50 nor more than $10,000; and the third class containing those corporations whose paid-up capital and surplus is not less than the sum which, when used as a measure for computing the tax at the same rate thereon, will produce a tax of $10,000. In other words, in determining the basis for the computation of the tax levied, it has adopted, for the first and third classes, the lump sum method of measuring the amount of the tax, such sum being $50 for the first and $10,000 for the third class; and for the second class it has adopted the rate or percentage method, the rate being 3½ mills on each dollar of paid-up capital and surplus. Unless there is such an entire absence of any reasonable basis for such a classification that it must be held to be purely arbitrary, and therefore discriminatory, this court cannot interfere with the exercise, by the Michigan Legislature, of its judgment and discretion in thus grading the amount of such tax according to the amount of paid-up capital and surplus. With the question whether the judgment of the Legislature upon this subject was correct or wise this court is, of course, not concerned.

[9] It cannot, in my opinion, be held that the method of classification used in measuring the amount of the tax to be levied under this statute is wholly arbitrary and without any reasonable basis. The mere fact that the amount of an excise tax is graduated according to the amount or size of property or business adopted as the standard of measurement for the purpose of computation does not render such a tax so lacking in uniformity or equality that its enforcement operates as a denial of due process of law or of the equal protection of the laws. Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; Clark v. Titusville, 184 U. S. 329, 22 Sup. Ct. 382, 46 L. Ed. 569; Keeney v. New York, 222 U. S. 525, 32 Sup. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139; Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414. I am satisfied that the imposition of these minimum and maximum amounts constitutes a reasonable classification of the corporations involved into classes, and that as to the members of each of such classes the tax prescribed is equal and uniform. The contention of the plaintiff in this connection must be overruled, and that of the defendant sustained.

[10] 3. The conclusions reached and expressed with respect to the contention of plaintiff just considered apply with equal force to the argument presented by plaintiff to the effect that the tax in question, regarded as a specific tax (which, as hereinafter indicated, it must be held to be), is not uniform upon the classes upon which it operates, and that therefore it violates section 4 of article 10 of the Michigan Constitution. That section provides that:

"The Legislature may by law impose specific taxes, which shall be uniform upon the classes upon which they operate."

As, for reasons stated, the "classes" upon which this tax operates are the three classes of corporations referred to, upon the members

of each of which classes such tax operates uniformly, the contention of plaintiff that corporations as a class, in contradistinction to individuals or other legal entities, constitute the "class" upon which this tax operates, within the meaning of this constitutional provision, must be overruled. Union Trust Co. v. Detroit Common Council, 170 Mich. 692, 137 N. W. 122; Jasnowski v. Board of Assessors, 191 Mich. 287, 157 N. W. 891.

[11] 4. It is urged by plaintiff that the charge prescribed by section 4 of Act 85 is in reality a property tax, which, not being uniform, is in violation of section 3 of article 10 of the Michigan Constitution, requiring that:

"The Legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes."

With the contention that the charge prescribed by this statute is a property tax I am wholly unable to agree. As already appears, it is expressly recited in section 4 of Act 85 that the denominated "privilege fee" therein prescribed shall be paid by each of the corporations subject thereto "for the privilege of exercising its franchise and of transacting its business within this state." It cannot be doubted that this express declaration by the Legislature of the purpose for which this annual "privilege fee" was levied stamps it as an excise, rather than a property, tax, Kansas City, Ft. Scott & Memphis Railway Co. v. Botkin, 240 U. S. 227, 36 Sup. Ct. 261, 60 L. Ed. 617; Lusk v. Botkin, 240 U. S. 236, 36 Sup. Ct. 263, 60 L. Ed. 621; Kansas City, Memphis & Birmingham R. R. Co. v. Stiles, 242 U. S. 111, 37 Sup. Ct. 58, 61 L. Ed. 176; Illinois Central R. R. Co. v. Mississippi Railroad Commission (D. C.) 229 Fed. 248; Coit & Co. v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; Pingree v. Auditor General, 120 Mich. 95, 78 N. W. 1025, 44 L. R. A. 679; Union Trust Co. v. Probate Judge, 125 Mich. 487, 84 N. W. 1101; Union Trust Co. v. Detroit Common Council, supra; 26 Ruling Case Law, p. 35.

Nor does the fact that the amount of the tax to be levied in any particular case is measured and determined by the sliding scale used as the basis for the computation thereof render it any the less an excise tax, or operate to give it the character of a property tax. Clark v. Titusville, supra; Kansas City, Ft. Scott & Memphis Railway Co. v. Botkin, supra; Union Trust Co. v. Probate Judge, supra.

As, therefore, the premise of this argument, that the tax is a property tax, is clearly unsound, the contention based thereon, to the effect that such tax lacks the uniformity required by the Michigan Constitution, is equally without merit. It follows that, so far as such contention is concerned, the claim of the defendants that it appears upon the face of the bill of complaint that the plaintiff is not entitled to the relief prayed must be sustained.

[12] 5. It is necessary to consider one remaining ground upon which plaintiff challenges the constitutionality of Act 85, and bases its prayer for an injunction restraining the enforcement thereof; all of the other grounds upon which the prayer for such relief is rested having been

thus disposed of adversely to the claims of plaintiff. Whether, then, the motion to dismiss the bill, for the reason that it appears from the face of such bill that plaintiff is not entitled to the relief prayed therein, should be granted, necessarily depends upon, and involves, a determination of the merits of this remaining objection to the constitutionality of said act. This objection rests upon the contention urged by plaintiff in its bill that the statute in question is unconstitutional because it provides for the payment of the taxes to be collected thereunder into the general fund of the state, instead of into the primary school interest fund, as required by the Michigan Constitution.

Section 1 of article 10 of the present Michigan Constitution, which took effect January 1, 1909, provides as follows:

"All subjects of taxation now contributing to the primary school interest fund under present laws shall continue to contribute to that fund, and all taxes from such subjects shall be first applied in paying the interest upon the primary school, university and other educational funds in the order herein named, after which the surplus of such moneys shall be added to and become a part of the primary school interest fund."

### Section 6 of article 10 of said Constitution provides as follows:

"Every law which imposes, continues or revives a tax shall distinctly state the tax, and the objects to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

It is therefore clear that, if the tax imposed by Act 85 belongs to the "subjects of taxation" which, under the laws in force at the time of the taking effect of the present Constitution of the state, contributed to the primary school interest fund, such tax must now "continue to contribute to that fund," in accordance with the constitutional provisions just quoted. It is equally clear that the statute under consideration must "distinctly state the tax, and the objects to which it is to be applied".

Does this statute conform to these constitutional requirements? If not, it is, of course, unconstitutional and void, and in that event the motion to dismiss the bill must be denied. Section 8 of Act 85 contains the following provision:

"All fees of every nature paid to the secretary of state under the provisions of this act shall be covered into the state treasury and shall there be credited to the general fund of the state, and shall be available for any purpose for which such general fund is made available by law."

Whether the subject of the taxation imposed by this statute was a subject which contributed to the primary school interest fund of the state of Michigan under the laws in force at the time of the adoption of the present state Constitution, and which therefore must continue to contribute to such fund, depends upon the question whether it belongs to a class of subjects contributing to that fund at that time. Jasnowski v. Board of Assessors, supra. The tax, then, imposed by Act 85 being an excise tax levied upon each of the designated corporations "for the privilege of exercising its franchise and of transacting its business within this state," did the taxes, from the class of subjects of taxation to which the subject of this excise tax—that is, the "privi-

lege" in question—belongs, contribute, under the Michigan laws in force on January 1, 1909, to the primary school interest fund?

On the date mentioned there was in effect Act 182 of the Michigan Public Acts of 1891, entitled "An act to provide for the payment of a franchise fee by corporations," as amended. Section 1 of that act provided that every domestic corporation required to file articles of association with the secretary of state and every foreign corporation permitted to transact business in Michigan should pay to the secretary of state a "franchise fee of one-half of one mill upon each dollar" of the authorized capital stock of such corporation. Section 3 of said act, being section 11,354 of the Michigan Compiled Laws of 1915, as amended prior to January 1, 1909, and as in force at that time, provided as follows:

"The fees collected under the provisions of this act shall be paid into the state treasury, and shall be applied in paying the interest upon the primary school, university and other educational funds, and the interest and principal of the state debt, in the order herein recited, until the extinguishment of the state debt other than the amounts due to educational funds, when such specific taxes shall be added to and constitute a part of the primary school interest fund, as provided in section 1 of article XIV of the Constitution of Michigan."

The taxes imposed by the statute just referred to, thus expressly designated therein as "specific taxes," constituted, in my opinion, an excise tax, levied upon the corporations subject thereto for the privilege of transacting their business in Michigan, as was distinctly held by the Michigan Supreme Court in its decision in Coit & Co. v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819, cited and relied on by defendants in their brief as authority to the effect that such tax "was a tax upon the privilege of doing business in Michigan." As was said by the court in that case, by which this court is bound in construing said statute:

"The law in question imposes a tax upon corporations for the privilege of doing business in Michigan. It is a tax upon the occupation of the corporation, with a provision that all its contracts shall be void until the tax is paid."

It is therefore plain that the excise tax prescribed by the present statute was the same kind of a tax as the excise tax prescribed by the former statute just considered, and that the subject of the present tax belongs to the same class of subjects of taxation as did the subject of the tax imposed by said former statute, which latter contributed to the primary school interest fund under a state law in force at the time of the adoption of the present Michigan Constitution. It necessarily follows that this present excise tax also must contribute to that fund, and that the Michigan Legislature was without the power to provide for the payment of such tax into the general fund, and its attempt to do so is unconstitutional and void. Chambe v. Probate Judge, 100 Mich. 112, 58 N. W. 661; Union Trust Co. v. Probate Judge, supra.

This act, therefore, does not correctly state the tax thereby imposed and "the objects to which it is to be applied," as required by the Michigan Constitution, and the act is plainly in violation thereof and invalid.

275 F.—41

Chambe v. Probate Judge, supra. As was said by the Michigan Supreme Court in its decision in the case just cited, which, as already observed, is binding upon this court as a construction of the constitutional and statutory provisions involved:

"Our Constitution, as is seen, provides that every law which imposes a tax must state the object to which it is to be applied. In this law the object was stated, and it is found that, within the express terms of the Constitution, the moneys arising from it cannot be so applied. This must defeat the whole act, for it is impossible for this court to say that any part of the act would have met the approval of the Legislature, had the moneys arising from the tax been appropriated in the act as provided by the Constitution. It is safe to say that, if the Legislature had supposed these moneys arising from the tax could not be appropriated to the general state fund, and made applicable to the general expenses of the state government, the act would not have met with the legislators' approval. For these reasons, we think the whole act must be held void."

It is true that in the early case of Walcott v. People, 17 Mich. 68 (not cited in the briefs of either party hereto), it was held, under a provision of the Michigan Constitution of 1850, identical in terms with section 6 of article 10 of the present Constitution, now being considered, that a statute imposing what was therein designated as a specific tax was not unconstitutional in failing to state the fund to which such tax should be credited. That case, however, is clearly distinguishable from the instant case, in that the state Constitution of 1850, then in force (article 14, § 1), expressly provided that "all specific state taxes" (with certain immaterial exceptions) should be applied to the primary school interest fund; and it was therefore unnecessary, and would serve no useful purpose, to require the Legislature, after it has designated the tax there involved as a "specific state tax," to repeat the provision for the proper application of such tax already expressly prescribed in the state Constitution. As was pointed out by the Michigan Supreme Court in its opinion in that case:

"It is apparent that the fundamental law has irrevocably prescribed the application of all such specific state taxes as that imposed by the act in question, and that the Legislature could in no manner change the purpose or alter the destination of the tax. The application is not only unalterably fixed, but is specifically defined, and nothing could be added by legislation but an idle repetition of the language of the constitution. The statute distinctly describes the tax, and directs its payment into the state treasury, and the Constitution then takes the subject from the sphere of legislative discretion, and decrees the uses to which the money must be appropriated. It inevitably follows that, by the conjoint operation of the statute and Constitution, the object to which the tax would be applied is made most distinct and certain, and no language in the act could make it more so. I think it may well be doubted whether the men who framed the Constitution, or the people who adopted it, proposed to require a thing so vain and fruitless as the re-enactment of the constitutional provision in every law imposing a tax like that in question."

Under the present Michigan Constitution, a wholly different situation is presented in this respect. The application of the tax imposed by Act 85 was not "specifically defined" in such Constitution, and it was impossible for the Legislature, by reference to the Constitution, or, indeed, otherwise, to ascertain or determine whether the subject of this

tax belonged to a class of subjects of taxation which contributed to the primary school interest fund under the laws in force at the time of the adoption of the present Constitution. The reasons, therefore, for the conclusion reached in Walcott v. People, supra, as expressly stated in the opinion therein, do not apply to the present case, which is not controlled by the decision cited. Moreover, the statute there involved was entirely silent as to the application of the tax imposed, while here, as in Chambe v. Probate Judge, supra, to quote the language of the Michigan Supreme Court in Union Trust Co. v. Probate Judge, supra:

"Instead of omitting to state the application to be made of the fund, the law stated it with fatal accuracy."

It results that Act 85 must be held unconstitutional and void, and hence the contention of defendants that the bill should be dismissed, because its allegations show that plaintiff is not entitled to the relief prayed, must be overruled.

It necessarily follows that the motion to dismiss the bill must be denied.